UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN GOODMAN,

            Plaintiff,

  -against-

THE COUNTY OF NASSAU and
NASSAU COUNTY DETECTIVE SHERMAN PAYAMI,

            Defendants.

AMENDED COMPLAINT

Index: 21-CV-5455 (GRB) (SIL)

The Plaintiff, Kevin Goodman, complaining of the defendants through his attorneys at Barket Epstein Kearon Aldea & LoTurco, LLP, respectfully shows to this Court and alleges that he was deprived of his civil rights and sustained injury as a result of such deprivations.

**INTRODUCTION**

1. This case is about a member of the Nassau County Police Department who was caught lying under oath more than fifty times in connection with the arrest and prosecution of the Plaintiff, Kevin Goodman. Once video evidence exposed the officer's lies, and following an internal investigation conducted by the Nassau County District Attorney's Office, all charges against Mr. Goodman were dropped. In an extraordinary measure, the dismissal came alongside an order allowing Mr. Goodman's ordeal to form the basis of a special disclosure in every open criminal case associated with the arresting officer, as well as potential disclosures even in his closed cases. Upon dismissing the criminal action, the criminal court judge went on record to recognize the "blatant inaccuracies" in the officer's statements and the "dishonesty attached to [Mr. Goodman's] arrest."

2. In the vast majority of cases, police officers in Nassau County and elsewhere perform difficult work, under intense pressure, with courage, transparency, and good faith. But a small minority of cases reflect outlier officers who break that mold, harming not just their own credibilies but poisoning the well of good faith earned by their fellow officers. This case is an unusually clear example of that unfortunate latter phenomenon—flush with sworn written and oral statements that can be measured against video evidence to prove literally dozens of lies about the basis to arrest our client.

3. Through this action, Mr. Goodman seeks the Court's assistance in obtaining damages to compensate him for the horror associated with being arrested and prosecuted based upon a police officer's lies, and to secure punitive damages large enough to make an example of this lamentable conduct.

**JURISDICTION, VENUE, AND COMPLIANCE WITH 50-H PROCEDURES**

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. §§ 1983, 1985 and 1988.

5. Supplemental jurisdiction over Plaintiff's state law claims exists pursuant to 28 U.S.C. 1367(a).

6. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose, and in which the Defendants resided or conducted business.

7. Mr. Goodman served the Defendants with a notice of his claims, their nature, and the date they arose within ninety days of the dismissal of the charges against him.

8. A 50-H hearing was held on August 4, 2021

9. More than thirty days have passed since the 50-H Hearing was held, and the Defendants have not made adjustment or payment to Goodman for his claims.

## JURY DEMAND

10. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

11. Plaintiff, Kevin Goodman, is a resident of Nassau County, New York.

12. Defendant Nassau County is a municipal entity in the State of New York with power to hire, train and discipline members of the Nassau County Police Department, as well as to conduct internal investigations into allegations of wrongdoing.

13. Defendant Nassau County Detective Sherman Payami ("Detective Payami") is sued in his individual capacity. At all relevant times, he was an agent of the Nassau County Police Department, acting under color of state law, within the scope of his employment, pursuant to statutes, ordinances, regulations, policies, customs and usage of the County of Nassau.

## FACTS

14. Prior to July 24, 2019, Detective Payami had regularly parked near a certain traffic control device located at the intersection of Locust Place and Colonial Parkway in Nassau County, New York ("the Intersection").

15. Between September 1, 2018 and August 31, 2019, Detective Payami issued more than 150 summonses for alleged violations committed in the vicinity of the Intersection.

16. Detective Payami also maintained an exceptionally high level of summonses, which he viewed as critical to obtaining promotions within the Nassau County Police Department.

17. Detective Payami had approximately 1,582 summonses from September 1, 2018 to August 31, 2019 alone.

18. At approximately 8:40pm on July 24, 2019, Detective Payami was again waiting near the Intersection.

19. At approximately 8:40pm on July 24, 2019, Mr. Goodman pulled up to the Intersection with his right-hand traffic signal on.

20. At approximately 8:40pm on July 24, 2019, Mr. Goodman pulled up to the Intersection and came to a complete stop.

21. At approximately 8:40pm on July 24, 2019, Mr. Goodman turned rightward at the Intersection onto Colonial Parkway.

22. Detective Payami then began to follow Mr. Goodman, ultimately pulling him over on Bournedale Road North.

23. Detective Payami has claimed under oath that he pulled over Mr. Goodman for failing to signal at the Intersection, but this allegation is false.

24. Detective Payami has claimed under oath that he pulled over Mr. Goodman for failing to stop at the Intersection, but this allegation is false.

25. Detective Payami approached Mr. Goodman's driver's side window and asked for certain documents, including Mr. Goodman's license, registration and insurance.

26. Mr. Goodman provided his license, registration and insurance to Detective Payami upon request.

27. Mr. Goodman and Detective Payami spoke with each other during and around Mr. Goodman's production of records.

28. While Detective Payami later swore that Mr. Goodman appeared intoxicated during this initial exchange, in reality Detective Payami asked Mr. Goodman reengage his car and to drive up the block to a different location (the "Second Location").

29. Detective Payami later admitted that he would never let anybody move their own car if he believed that that person was intoxicated.

30. Mr. Goodman complied and drove his car safely up the block to the Second Location.

31. Detective Payami proceeded to administer his version of the Standardized Field Sobriety Tests ("SFSTs").

32. Detective Payami instructed Mr. Goodman to exit his vehicle and walk to a location behind it.

33. Detective Payami claimed under oath that Mr. Goodman was "off balance" during this walk, but video evidence proves this to be false.

34. Detective Payami began the SFSTs with his version of the Horizontal Gaze Nystagmus ("HGN") test—a test designed to measure involuntary jerking in a suspect's eyes.

35. Detective Payami swore that before administering the HGN test he asked Mr. Goodman whether he had any problems with his eyes and that Mr. Goodman said no. Video evidence demonstrates that Detective Payami made no such query.

36. Detective Payami swore that he allowed for five seconds to test Mr. Goodman's resting nystagmus—which is false.

37. Detective Payami swore that Mr. Goodman failed to keep his head steady during the HGN test—this, too, was a lie.

38. Detective Payami swore that when he administered the HGN, Mr. Goodman was not facing into the direction of flashing lights—which is verifiably false.

39. Detective Payami swore he then proceeded to conduct the Walk and Turn test. This was false.

40. The next component of Detective Payami's SFST battery was the One ~~Legged~~ Leg Stand—which Mr. Goodman performed successfully.

41. Detective Payami swore that he allowed Mr. Goodman to skip the One ~~Legged~~ Leg Stand because Mr. Goodman had had a hip surgery—a clear lie, as video evidence proves the administration of this test.

42. Detective Payami then took down no notes of Mr. Goodman's successful completion of the One ~~Legged~~ Leg Stand.

43. Detective Payami crossed out the One ~~Legged~~ Leg Stand from his written "field notes" submitted to law enforcement in connection with Mr. Goodman's charges—suggesting, falsely, that no such test had been performed.

44. Detective Payami swore that if he had conducted the One ~~Legged~~ Leg Test he would have notated the results—which he did not.

45. During the Walk and Turn, which came next, Mr. Goodman performed perfectly despite clearly erroneous instructions—a fact about which Detective Payami then lied under oath.

46. Detective Payami claimed under oath that Mr. Goodman stepped "off the line" during the Walk and Turn. This was false.

6

47. Detective Payami claimed under oath that Mr. Goodman raised his arms during the Walk and Turn. This was false.

48. Detective Payami claimed under oath that he administered a portable breath test after waiting approximately 20 minutes after the initial stop. This was false.

49. Detective Payami claimed under oath that, in front of Mr. Goodman, he took the wrapper off a brand new plastic mouthpiece for the portable breath test. This was false.

50. Detective Payami had Mr. Goodman blow several times into the same mouthpiece before registering any results—in violation of proper protocol.

51. Detective Payami placed Mr. Goodman under arrest on alleged suspicion of driving under the influence of alcohol.

52. There was no probable cause to believe that Mr. Goodman was intoxicated or impaired.

53. There was no probable cause to believe that Mr. Goodman had committed any offenses.

54. Detective Payami handcuffed Mr. Goodman and drove him to a police precinct for further testing.

55. Detective Payami taunted Mr. Goodman about the prospect that his friends, family and neighbors would read about his arrest in a local periodical, the "Great Neck Record."

56. While Mr. Goodman was handcuffed to a bench at the precinct, Detective Payami, doing paperwork and with his colleague sitting to his left, commented that Mr. Goodman has a "big crooked nose."

57. Noticing a camera in the testing room, Mr. Goodman requested that the tests be recorded. This request was denied.

58. After re-performing the same tests he had performed roadside, Mr. Goodman agreed to breathe into a breathalyzer machine.

59. Rather than administering the test properly, Mr. Goodman was asked to blow once, and then a second time, into the breathalyzer.

60. Nevertheless, Mr. Goodman still blew below a 0.08% blood alcohol content.

61. Mr. Goodman was held in a holding cell for approximately twelve hours.

62. Mr. Goodman, an innocent man, was charged with violating section 1192 of the Vehicle and Traffic Law.

63. The charges against Mr. Goodman remained pending for more than a year.

64. On October 14, 2020, a hearing was conducted in Nassau County District Court (Hon. Valerie J. Alexander) to determine, *inter alia*, whether there was probable cause to arrest Mr. Goodman.

65. Unaware that there was video evidence of the stop, Detective Payami took the witness stand.

66. Detective Payami proceeded to tell more than 50 lies under oath.

67. In December 2020, the criminal court dismissed all criminal charges against Mr. Goodman, but initially it preserved for trial the non-criminal charge of violating VTL 1192(1).

68. On March 22, 2021, now having reviewed the video evidence, the Nassau County District Attorney's Office (the "NCDAO") recognized on the record that it had conducted an internal investigation into Detective Payami's conduct in relation to the arrest of Mr. Goodman.

69. The NCDAO recognized the "potential inconsistencies … observed in th[e] video in comparison to [Detective Payami's] sworn testimony under oath from October 14th of 2020."

8

70. The NCDAO thus moved for the case against Mr. Goodman to be dismissed in the interest of justice.

71. The NCDAO went further, and moved to make a disclosure about Mr. Goodman's case "on all of Detective Payami's open cases and potentially closed cases as well…."

72. Recognizing, now in the criminal court's words, the "blatant inaccuracies" in Detective Payami's sworn testimony, the criminal court granted the applications and dismissed the case.

73. The criminal court concluded by wishing Mr. Goodman luck while recognizing the injustice he had battled for more than a year:

> Mr. Goodman, good luck to you, because this has been quite the trying experience I'm sure. … [F]or these kind of facts to come to light, and it doesn't happen very often, it's good at least that in this particular instance we have a situation where we can see that there was some dishonesty attached to your arrest.

**DAMAGES**

74. The Defendants' illegal behavior caused Mr. Goodman emotional distress, humiliation, loss of liberty for the hours he spent in custody plus the time required of him to attend court proceedings over the course of fifteen months, the requirement to abide by the orders and processes of the Court, and damage to his reputation; it also caused him pecuniary injuries arising from the attorneys' fees associated with his criminal defense.

75. As a direct and proximate result of the acts of the Defendants, Mr. Goodman's rights under the state and federal constitutions were violated.

76. Because of the nature of these wrongs, including dozens of lies under oath committed by Detective Payami, exemplary (punitive) damages are appropriate.

77. Upon prevailing, Plaintiff will also be entitled to attorneys' fees under 42 U.S.C. 1988(b).

78. Damages are in the amount to be determined at trial, but are in excess of seven hundred and fifty thousand dollars ($750,000.00) exclusive of interest, costs, and attorneys' fees.

### FIRST CAUSE OF ACTION
### FALSE ARREST UNDER 42 U.S.C §1983

79. Plaintiff re-alleges each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

80. Plaintiff's rights have been violated under the Fourth and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. 1983, in that he was arrested without probable cause.

81. Detective Payami caused Plaintiff's seizure without any legal justification.

82. Detective Payami intended to confine Plaintiff.

83. Plaintiff was conscious of his confinement.

84. Plaintiff did not consent to his confinement.

85. Plaintiff's confinement was not otherwise privileged.

86. When Plaintiff was arrested, there was no probable cause to believe that he had committed a crime.

87. By reason of his false arrest, Plaintiff incurred loss of liberty, emotional distress, damage to his reputation, and pecuniary harms.

88. For these reasons, he has been damaged in an amount to be determined at trial, and an award of attorneys' fees is appropriate under 42 U.S.C. 1988(b).

**SECOND CAUSE OF ACTION**
**MALICIOUS PROSECUTION UNDER 42 U.S.C §1983**

89. Plaintiff re-alleges each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

90. Detective Payami, despite knowing that probable cause did not exist to arrest or prosecute Plaintiff, acted to initiate criminal proceedings against Plaintiff.

91. Detective Payami forwarded information to the NCDAO relevant to charging Mr. Goodman while he simultaneously withheld material exculpatory information from the NCDAO.

92. Among other things, Detective Payami withheld information from the NCDAO that Mr. Goodman had successfully performed the One ~~Legged~~ Leg Stand.

93. Detective Payami lied to the NCDAO, claiming that he had not asked Mr. Goodman to conduct the One ~~Legged~~ Leg Stand.

94. Detective Payami withheld information from the NCDAO that he had asked Mr. Goodman to drive his car after having pulled him over and conversed with him—a request that, according to Detective Payami's admission later on, he would never make of someone he actually believed in good faith to be under the influence of alcohol.

95. Detective Payami withheld information from the NCDAO that Mr. Goodman had performed the Walk and Turn test successfully—lying to the NCDAO to assert otherwise.

96. Detective Payami withheld information from the NCDAO that he had conducted the HGN test in violation of standard protocols.

97. Detective Payami lied to the NCDAO about the manner in which he administered the portable breath test.

98. The criminal proceedings against Plaintiff ended in Plaintiff's favor, as all charges were dismissed.

99. Detective Payami acted with malice.

100. Plaintiff's liberty was deprived after his arraignment, as he remained subject to criminal court process—having to return to criminal court repeatedly, and, during the entire period of time from his arraignment to the dismissal of charges, he had to render himself amenable to the orders and processes of the criminal court.

101. Detective Payami's conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

102. By reason of his malicious prosecution, Plaintiff incurred loss of liberty, emotional distress, damage to his reputation, and pecuniary harms.

103. For these reasons, he has been damaged in an amount to be determined at trial, and an award of attorneys' fees is appropriate under 42 U.S.C. 1988(b).

**THIRD CAUSE OF ACTION**
**STATE LAW MALICIOUS PROSECUTION**

104. Plaintiff re-alleges each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

105. Detective Payami, despite knowing that probable cause did not exist to arrest or prosecute Plaintiff, acted to initiate criminal proceedings against Plaintiff.

106. The criminal proceedings against Plaintiff ended in Plaintiff's favor, as all charges were dismissed.

107. Detective Payami acted with malice.

108. Plaintiff's liberty was deprived after his arraignment, as he remained subject to criminal court process—having to return to criminal court repeatedly, and, during the entire period

of time from his arraignment to the dismissal of charges, he had to render himself amenable to the orders and processes of the criminal court.

109. Detective Payami's conduct violated Plaintiff's rights under the New York State Constitution.

110. By reason of his malicious prosecution, Plaintiff incurred loss of liberty, emotional distress, damage to his reputation, and pecuniary harms.

111. Detective Payami was at all relevant times acting within the scope of his employment for Nassau County—acting with its assent, for its benefit, and under its control.

112. Nassau County is liable to the Plaintiff under a theory of *respondeat superior*.

113. For these reasons, he has been damaged in an amount to be determined at trial, and an award of attorneys' fees is appropriate under 42 U.S.C. 1988(b).

**FOURTH CAUSE OF ACTION**
**FABRICATION OF EVIDENCE UNDER 42 U.S.C. §1983**

114. Plaintiff re-alleges each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

115. Detective Payami was at all times acting as an investigating official in connection with Plaintiff's criminal charges.

116. Detective Payami fabricated evidence related to the criminal charges, including, *inter alia*, standardized field sobriety notes which falsely indicated that Plaintiff failed the HGN test because he "kept moving head," that Plaintiff was "off balance" and failed the Walk-and-Turn test, that Plaintiff was not administered the One Leg Stand test, that Detective Payami properly administered a portable breath test, and that Plaintiff blew a 0.01% on the portable breath test.

117. Detective Payami forwarded the fabricated evidence to members of the Nassau County District Attorney's Office,

118. Plaintiff suffered a loss of liberty as consequence of the evidence-fabrication, including hours he spent in custody plus the time required of him to attend court proceedings over the course of fifteen months and the requirement to abide by the orders and processes of the Court.

119. For these reasons, he has been damaged in an amount to be determined at trial, and an award of attorneys' fees is appropriate under 42 U.S.C. 1988(b).

**FIFTH CAUSE OF ACTION**
***BRADY* VIOLATION UNDER 42 U.S.C. §1983**

120. Plaintiff re-alleges each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

121. Detective Payami intentionally withheld information from the Plaintiff and from prosecutors that was exculpatory and impeaching. This withheld evidence included, *inter alia*, that the Plaintiff passed the HGN test, passed the Walk-and-Turn test, and passed the One Leg Stand test; that Detective Payami erroneously administered a portable breath test and then mis-reported the result.

122. Plaintiff was prejudiced by the withholding of exculpatory and impeaching evidence. Plaintiff suffered a loss of liberty as consequence of the evidence-fabrication, including hours he spent in custody plus the time required of him to attend court proceedings over the course of fifteen months and the requirement to abide by the orders and processes of the Court.

123. For these reasons, he has been damaged in an amount to be determined at trial, and an award of attorneys' fees is appropriate under 42 U.S.C. 1988(b).

~~1.~~ [Formatted: Font: Not Bold]

**WHEREFORE**, Plaintiff prays for relief as follows:

 A. The Court should award compensatory damages to Plaintiff and against the Defendants jointly and severally, in an amount to be determined at trial;

 B. The Court should award exemplary (punitive) damages to Plaintiff, and against all Defendants, in an amount to be determined at trial;

 C. The Court should award attorneys' fees pursuant to 42 U.S.C. § 1988;

 D. Plaintiff demands a trial by jury;

 E. The Court should award pre-judgment and post-judgment interest and recovery of Plaintiff's costs; and

 F. For any and all other relief to which Plaintiff may be entitled.

Dated: Garden City, New York
   ~~September 29, 2021~~May 16, 2022

**BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP** [Formatted: Font: Bold]

By: /s/ *Alexander Klein*

Alexander Klein, Esq.
666 Old County Road, Suite 700
Garden City, New York 11530
(516) 745-1500

15